Benjamin M. Gipson (CA SBN: 222830)
ben.gipson@us.dlapiper.com
Hector E. Corea (CA SBN: 318971)
hector.corea@us.dlapiper.com
**DLA PIPER LLP**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:  310.595.3022
Fax:  310.595.3300

Attorneys for Plaintiff
ALATUS AEROSYSTEMS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALATUS AEROSYSTEMS, a California corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARIO VELAZQUEZ, an individual, and DOES 1 through 50, inclusive<br><br>　　　　Defendants. | CASE NO.  19-cv-1869<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Date: To Be Determined<br>Time: To Be Determined<br>Courtroom:<br>Judge: |

DLA PIPER LLP (US)
LOS ANGELES

WEST\287795179.8

1

# TABLE OF CONTENTS

Pages

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 2

      A.    Alatus' Business in the Defense and Aerospace Industries ................... 2

      B.    Defendant Velazquez's Employment with Alatus and Termination ..... 3

      C.    Defendants' Departure and Misappropriation of Trade Secrets. ........... 3

III.  ARGUMENT ..................................................................................................... 5

      A.    Alatus Will Succeed on the Merits of its Claims .................................. 5

            1.    Alatus Is Likely to Prevail on the Merits of its Trade Secret
                  Misappropriation Claims. ............................................................ 5

                  i.    Legal Standard .................................................................. 6

                  ii.   Alatus Has Protectable Trade Secrets. ............................. 7

                  iii.  Defendant Velazquez Misappropriated the Trade
                        Secrets. ............................................................................. 8

                  iv.   Alatus Faces Irreparable Injury and Potential Damages as
                        a Result of the Misappropriation. .................................... 9

            2.    Alatus Will Likely Prevail on the Merits of its Contract
                  Claims. ....................................................................................... 10

      B.    Alatus Will Suffer Irreparable Harm if a TRO is Not Granted. .......... 11

      C.    The Balance of Hardships Favors Granting this Application .............. 13

      D.    The Public Interest Weighs Towards Granting an Injunction ............. 14

IV.   REQUEST FOR EXPEDITED DISCOVERY ............................................... 14

V.    CONCLUSION ............................................................................................... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Pages

**Federal Cases**

02 Micro Intern, Ltd. v. Monolithic Power Systems,
420 F. Supp. 2d 1070 (N.D. Cal. 2006)...................................................9

*Am. LegalNet, Inc. v. Davis*,
673 F.Supp.2d 1063 (C.D. Cal. 2009).....................................................15

*Arista Records LLC v. Does 1-19*,
551 F. Supp. 2d 1 (D.D.C. 2008) ..........................................................15

*Babcock Power, Inc. v. Kapsalis*,
2017 WL 1206012 (W.D. Ky. Mar. 30, 2017)........................................9

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
873 F. Supp. 2d 1192....................................................................7, 8, 9

*Comet Technologies USA v. Beuerman*,
2018 WL 1990226 (N.D. Cal. 2018)........................................................6

*Deerpoint Group, Inc. v. Agrigenix*,
345 F.Supp.3d 1207 (E.D. Cal. 2018) .....................................................6

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ................................................................13

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) ..............................................................13

*Gucci Am., Inc. v. Los Altos Boots, Inc.*,
2014 WL 12561613 (C.D. Cal. Aug. 27, 2014) ....................................13

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ..............................................................12

*Kelly v. Primco Mgmt.*, Inc.
2015 WL 10990368 (C.D. Cal. Jan 12, 2015)......................................13

*Kim Laube & Co., Inc. v. Wahl Clipper Corp.*,
2013 WL 12084741 (C.D. Cal. Mar. 8, 2013) ....................................10

*L'Oreal USA Creative, Inc. v. Maggy Tsui*,
   2016 WL 9275404 (C.D. Cal. Dec. 22, 2016) ................................................ 15

*Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*,
   944 F. Supp. 2d 775 (N.D. Cal. 2013) .................................................. 8, 9

*MAI Systems Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993) ............................................................ 7

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) .................................................. 7

*Netflix Studios, LLC v. Dragon Media Inc.*,
   2018 WL 7891027 (C.D. Cal. Dec. 21, 2018) ........................................ 14

*Netlist, Inc. v. Diablo Tech., Inc.*
   2015 WL 153724, (N.D. Cal. Jan. 12, 2015) ........................................ 11

*Ocean Beauty Seafoods, LLC v. Pacific Seafood Group Acq. Co., Inc.*,
   648 Fed. Appx. 709 (9th Cir. 2016) .................................................. 11

*Religious Technology Ctr. v. Netcom On-Line Communication Services, Inc.*,
   923 F. Supp. 1231 (N.D. Cal. 1995) .................................................. 8

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*,
   240 F.3d 832 (9th Cir. 2001) ....................................................... 11, 12

*SV3, LLC v. GG Distribution, Inc.*,
   2019 WL 1090772 (C.D. Cal. Feb. 6, 2019) ........................................ 12, 15

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
   60 F.3d 27 (2d Cir.1995) ............................................................ 12

*Warner Bros. Entertainment, Inc. v. WTV Systems, Inc.*,
   824 F. Supp. 2d 1003 (C.D. Cal. 2011) ........................................... 5, 14

*Waymo LLC v. Uber Technologies, Inc.*,
   2017 WL 2123560 (N.D. Cal. May 15, 2017) ...................................... 12

*Western Directories, Inc. v. Golden Guide Directories, Inc.*,
   2009 WL 1625945 (N.D. Cal. June 8, 2009) ........................................ 9

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ................................................................ 5

**State Cases**

*Ajaxo Inc. v. E\*Trade GroupInc.*,
135 Cal.App.4th 21 (2005) .................................................. 6

*Morlife, Inc. v. Perry*,
56 Cal. App. 4th 1514 (1997) ............................................. 7

*Richman v. Hartley*,
224 Cal. App. 4th 1182 (2014) ......................................... 10

*Sargent Fletcher, Inc. v. Able Corp.*,
110 Cal. App. 4th 1658 (2003) ........................................... 6

*Whyte v. Schlage Lock Co.*,
101 Cal. App. 4th 1443 (2002) ....................................... 7, 8

**Federal Statutes**

18 U.S.C. §§ 1836 *et seq.* ................................................... 6

18 U.S.C. § 1839(5) ............................................................ 6

Defend Trade Secrets Act ("DTSA") ................................ 5

**State Statutes**

Cal. Civ. Code § 3426.1(b) .................................................. 6

Cal. Civ. Code § 3426.1(d) .................................................. 6

California Uniform Trade Secrets Act .............................. 5, 6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

## I.     **INTRODUCTION**

This case concerns the theft of an employer's most important, and protected, trade secrets. Defendant Mario Velazquez stole at least ten key documents from Alatus Aerosystems ("Alatus") at the end of his employment, when he still had access to confidential information and the trust of Alatus. He emailed these documents to himself, so he could access them when he departed and began his new employment.

When Alatus discovered this theft, it immediately contacted Velazquez to return this information. Velazquez returned only a portion of documents he took. Alatus noted this discrepancy and again asked Velazquez to return all Alatus documents he had in his possession. Velazquez again claimed he had returned all documents, which was plainly untrue. Alatus was thus forced to bring this action to recover its documents from Velazquez.

These documents contain Alatus' most coveted trade secrets, such as Alatus' entire pricing catalogue, containing a complete compilation of its customers, a list of the parts and products ordered by those customers, and Alatus' competitive pricing for those orders. Defendant also has in his possession Alatus' product specifications information setting out the raw materials required for the manufacturing of the products. Defendant also took confidential and proprietary information relating to each machining asset, including its operating system, and capacity. These are highly confidential trade secrets that belong to Alatus.

These actions unjustly enriched Velazquez, who is striving to evade the cost, time, and risk of building a competing business from scratch. In doing so, Velazquez breached his fiduciary duties, stole Alatus' trade secrets, and accessed Alatus' secured computer systems without permission. Velazquez's unlawful actions, all of which were undertaken with malicious intent, far exceed the norms of fair competition. These transgressions, if left unchecked, would not only irreparably damage Alatus, but would also undermine basic principles of fairness upon which businesses, employees, and consumers operate and rely.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

Alatus thus seeks a temporary restraining order enjoining Velazquez and all those in active concert or participation with him from using, disclosing, or sharing Alatus' sensitive trade secrets which includes customer pricing, material specifications and machining capabilities. Alatus also seeks an order permitting expedited discovery in this action to ensure that none of Alatus' trade secrets have been disclosed and that Velazquez has returned all proprietary information in his possession, custody, and control.

## II.   STATEMENT OF FACTS

### A.   Alatus' Business in the Defense and Aerospace Industries

Plaintiff Alatus is a longstanding California business that assembles, manufactures, and supplies parts and products for use in the aerospace and defense industries. (Declaration of Scott Holland in Support of TRO Application ("Holland Decl.") at ¶ 3.) With more than 50 years of experience serving clients across the state and nation, Alatus has earned a reputation as a leading provider of aviation components and systems. (Holland Decl. at ¶ 3.) Alatus has four locations in Southern California including the City of Industry, Chatsworth, Walnut, and Brea. (*Id*.)

Alatus specializes in manufacturing wings, landing gear, and engine pylons for commercial clients. (*Id*. at ¶ 4.) Alatus' reputation has also attracted the attention of numerous defense contractors and the United States Government. (*Id*. at ¶ 4.) Alatus assembles and supplies key military products, including aviation and artillery systems used by the nation's armed services. (*Id*.)

As a defense contractor, Alatus is subject to the International Traffic in Arms Regulations ("ITAR"). (*Id*. at ¶ 5.) ITAR controls the manufacture, sale, and distribution of defense-related products, services, and information. (Holland Decl. at ¶ 5.) Alatus invests great resources to maintain compliance with ITAR and ensure all information entrusted to Alatus by its partners is kept in strict confidence. (*Id*.)

DLA Piper LLP (US)
Los Angeles

### B.    Defendant Velazquez's Employment with Alatus and Termination

Defendant Mario Velazquez is Alatus' former project manager.  (Declaration of Adriana Ortiz in Support of TRO ("Ortiz Decl.") at ¶ 3.)  As part of his duties, Defendant Velazquez was responsible for interfacing between the Alatus production department and Alatus customers to facilitate customer orders and ensure timely delivery of parts and products.  (Ortiz Decl. at ¶ 4.)  Defendant Velazquez worked out of the Brea and Walnut locations.  (*Id*.)

As a condition of his employment with Alatus (and previously TSLA), Defendant Velazquez was offered employment on or about May 19, 2014, and he began work on or about June 9, 2014.  (*Id*. at ¶ 5, Ex. A.)  On that date he entered into an employee confidentiality agreement.  (*Id*.)  This was later supplemented by an additional mutual confidentiality agreement executed on June 16, 2016.  (*Id*.)  The Agreement required Defendant Velazquez to maintain all of Alatus' proprietary information in strict confidence.  (*Id*.)

Defendant Velazquez was employed by Alatus from June 2014 until approximately February 19, 2019.  (Ortiz at ¶ 7.)  Alatus terminated Defendant's employment when his position was eliminated due to restructuring. (*Id*.)

### C.    Defendants' Departure and Misappropriation of Trade Secrets.

There are strong indications that Defendant Velazquez knew that his position was going to be eliminated and contemplated working for a competitor and/or starting a competing business with a former Alatus executive, Richard Oak.  (Holland Decl. at ¶ 6.)  Defendant Velazquez and Mr. Oak were close associates prior to their termination, and upon information and belief, are currently working on a joint business venture competitive with Alatus' business.  (*Id*.)

After the termination of Defendant Velazquez's employment, Alatus engaged counsel to investigate whether Defendant Velazquez complied with his employment obligations leading up to his exit from the company.  (Declaration of Benjamin Gipson in Support of TRO Application ("Gipson Decl.") at ¶ 2.)  As part of the

-3-

investigation, Alatus' counsel conducted a forensic examination of Velazquez's company account.  (Gipson Decl. at ¶ 3.)  This led to the discovery that Defendant Velazquez had purposely emailed at least ten sensitive company documents containing Alatus' trade secrets to his personal email address mere days before his termination.  (*Id*. at ¶ 3, Ex. A.)

Alatus subsequently demanded the return of these confidential documents in August and September 2019.  (*Id*. at ¶ 4.)  In response, Defendant Velazquez returned approximately eight documents, claiming he had returned "all" of Alatus' proprietary information in his possession.  (*Id*. at ¶ 4, Ex. B.)  Velazquez's statements were plainly misleading given Alatus identified the highly sensitive documents still missing from his production.  (*Id*.)

These documents contain Alatus' most coveted business secrets.  This includes a spreadsheet containing a complete compilation of its customers, a list of the parts and products ordered by those customers, Alatus' competitive pricing for those orders, and the raw materials required for the products.  (Holland Decl. at ¶ 9.)  Defendant also has in his possession a detailed list of each machining asset, including its operating system, and capacity.  These are highly confidential trade secrets that belong to Alatus.  (*Id*.)

Alatus has taken great steps to guard its trade secrets from misuse.  (*Id*. at ¶¶ 10-14.)  Alatus requires all employees to sign confidentiality agreements, and limits access to these documents on a need-to-know basis for a select group of Alatus executives and managers—which included Defendant Velazquez.  (*Id*. at ¶¶ 11, 13-14.)

Alatus' security procedures are also heightened pursuant to ITAR.  (*Id*. at ¶ 10.)  Alatus ensures all employees with access to Alatus' confidential information are U.S. citizens, and further restricts access to all of its facilities using a visual compliance system requiring photographic identification of all visitors and restricting access to unauthorized individuals.  (*Id*.)

1   Alatus filed the instant action to recover its sensitive trade secrets from

2   Defendant Velazquez and all those in concert with him.  Alatus has reason to believe

3   Defendant Velazquez and his conspirators are actively using Alatus' trade secrets to

4   form a competitive venture and obtain an unfair head start in the industry.  (*Id.* at

5   ¶ 6.)  These trade secrets are the product of more than 50-years of hard earned labor

6   by Alatus, which Defendant should not be allowed to misuse at whim.

7   **III.   ARGUMENT**

8   This Court should enter a temporary restraining order against Defendant

9   Velazquez because there is: (1) a likelihood of success on the merits of Alatus' trade

10   secret and contract claims[1]; (2) a likelihood of irreparable harm in the absence of

11   preliminary relief; (3) the balance of hardships favors Alatus; and (4) an injunction

12   would be in the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 555

13   U.S. 7, 20 (2008); *Warner Bros. Entertainment, Inc. v. WTV Systems, Inc.*, 824 F.

14   Supp. 2d 1003 (C.D. Cal. 2011).  A temporary restraining order should issue under

15   these standards for the reasons described below.

16   **A.   Alatus Will Succeed on the Merits of its Claims**

17   1.   **Alatus Is Likely to Prevail on the Merits of its Trade Secret**

18   **Misappropriation Claims.**

19   Alatus will likely prevail on its trade secret claims under the federal Defend

20   Trade Secrets Act ("DTSA") and state California Uniform Trade Secrets Act

21   ("CUTSA") because its pricing lists and manufacturing specifications are protectable

22   trade secrets that were the subject of reasonable efforts to maintain their secrecy.  The

23   Court need look no further than the appended email showing Defendant Velazquez

24   purposefully absconded with Alatus' trade secrets and failed to return them upon

25   termination of his employment.  This is textbook misappropriation.

26

27   [1] Alatus here limits its contentions to its trade secret and contract claims as they support findings of irreparable harm justifying injunctive relief.  The remaining claims are subject to alternative relief in the form of monetary damages. Alatus

28   reserves its rights to seek monetary damages for all its claims to be proven at trial.

i.   <u>Legal Standard</u>

A "prima facie claim for misappropriation of trade secrets requires a plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Sargent Fletcher, Inc. v. Able Corp*., 110 Cal.App.4th 1658, 1665 (2003).

The elements for a claim under the DTSA and CUTSA, are nearly identical. *Compare* 18 U.S.C. § 1839(5), with Cal. Civ. Code § 3426.1(b).  "Given the similarity between DTSA and CUTSA claims . . . Court[s] will interpret … DTSA claims consistently with . . . CUTSA claims." *Deerpoint Group, Inc. v. Agrigenix*, 345 F.Supp.3d 1207, 1228 (E.D. Cal. 2018); *Comet Technologies USA v. Beuerman*, 2018 WL 1990226 at *4 (N.D. Cal. 2018) (finding misappropriation of trade secret claim under the CUTSA is likewise sufficient under the DTSA).

A "trade secret" is defined as: (1) information, (2) deriving independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, that (3) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  *See* Cal. Civ. Code § 3426.1(d); 18 U.S.C. §§ 1836 *et seq*.

Misappropriation occurs where an individual "(1) acquires a trade secret knowing or having reason to know that the trade secret has been acquired by 'improper means,' (2) discloses or uses a trade secret the person has acquired by 'improper means' or in violation of a nondisclosure obligation, (3) discloses or uses a trade secret the person knew or should have known was derived from another who had acquired it by improper means or who had a nondisclosure obligation or (4) discloses or uses a trade secret after learning that it is a trade secret but before a material change of position." *Ajaxo Inc. v. E\*Trade GroupInc*., 135 Cal. App. 4th 21, 66 (2005).

1          ii.      Alatus Has Protectable Trade Secrets.

2          Here, Alatus has identified the key documents containing its customer lists,

3   product orders, competitive pricing arrangements, and manufacturing specifications.

4   (Gipson Decl. at ¶¶ 3-4, Exs. A-B; Holland Decl. at ¶ 9.)  This information regarding

5   how Alatus manufactures its various products has been developed by the company

6   over years of experience and gives Alatus an advantage in the marketplace because

7   it can more efficiently make products that conform to the requirements of its

8   customers.  (Holland Decl. at ¶¶ 9, 15-17.)  *See Mattel, Inc. v. MGA Entertainment,*

9   *Inc*., 782 F. Supp. 2d 911, 959 (C.D. Cal. 2011) ("Information derives independent

10  economic value from not being generally known when its secrecy provides a business

11  with a substantial business advantage"); *Whyte v. Schlage Lock Co.*, 101 Cal.App.4th

12  1443, 1455-56 (2002) (holding that composite materials and processes to make a

13  company's locks had independent economic value); *Brocade Commc'ns Sys., Inc. v.*

14  *A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1213-14 (2012) (holding triable issues

15  remained because evidence demonstrated that plaintiff "developed" its trade secrets

16  to "optimize" its digital technology and such "trade secrets [may] allow a competitor

17  like [defendant] to develop a product that meets the needs of customers who are

18  already using [plaintiff's] products.").

19         The client list alone qualifies as a trade secret given it identifies with specificity

20  the particular products and specifications requested by all of Alatus' customers.  *See*

21  *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520-21 (9th Cir. 1993)

22  (holding that customer data assembled over number of years which gave company

23  ability to target customers most interested in their product had independent economic

24  value); *Morlife, Inc. v. Perry,* 56 Cal. App. 4th 1514, 1522-23 (1997) (holding

25  customer list built through years of development that allowed business to target

26  customers more interested in the product had independent economic value).

27         Alatus took reasonable steps to ensure its confidential and proprietary

28  information remained secret by, among other things: (1) disclosing it only to those

1   individuals who needed the information to perform their duties; (2) making known

2   to these individuals the fact that information was to be kept confidential; (3) limiting

3   access to Alatus' facilities to employees and consultants, and requiring admittance

4   by a security guard or company-issued ID card, and further requiring all visitors to

5   verify their identity through a visual compliance system as a precondition to entering

6   its grounds; and  (4) requiring individuals, such as the Velazquez, to agree to keep its

7   confidence including by executing written agreements affirming their obligation to

8   keep such information confidential.  (Holland Decl. at ¶¶ 10-14.)

9       All of these efforts by Alatus demonstrate it took measures that were

10  "reasonable under the circumstances" to guard its protectable trade secrets.  *See*

11  *Religious Technology Ctr. v. Netcom On-Line Communication Services, Inc*., 923 F.

12  Supp. 1231, 1253-1254 (N.D. Cal. 1995) (noting reasonable steps to protect trade

13  secrets included locked premises; logging, identification and limited distribution of

14  materials; and requiring photo identification and confidentiality agreements for

15  anyone given access to materials); *Whyte*, 101 Cal. App. 4th at 1454.

16                              iii.    Defendant Velazquez Misappropriated the Trade Secrets.

17      Defendant Velazquez misappropriated these trade secrets when he emailed

18  these documents to his personal email address before his termination.  (Gipson

19  Decl. at ¶¶ 3-4, Exs. A-B; Holland Decl. at ¶¶ 6-9; Ortiz Decl. at ¶¶ 5-7, Exs. A-B.)

20  He did so with intent to retain these documents post-termination to establish a

21  competitive venture using Alatus' hard-earned work.  (*Id*.)  Velazquez to date has

22  failed to return all of the files he took.  (*Id*.)

23      This is misappropriation.  *See A10 Networks, Inc.*, 873 F. Supp. 2d at 1213-

24  14 (holding misappropriation claims triable where defendants "copied or emailed

25  [plaintiff's] materials shortly before leaving [plaintiff]; and deleted related files in a

26  manner consistent with an effort to cover their tracks."); *Language Line Servs., Inc.*

27  *v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 783 (N.D. Cal.

28  2013) (holding misappropriation proven where Defendants "accessed and examined

[Defendants'] data" without authorization); *Babcock Power, Inc. v. Kapsalis*, No. 3:13-CV-717-CRS, 2017 WL 1206012, at \*8 (W.D. Ky. Mar. 30, 2017) (applying analogous trade secret statute to hold "[plaintiff] Vogt has established a triable issue on the question of misappropriation" where "Vogt has produced Bates stamped documents that [Defendant] Kapsalis does not dispute were in his possession after he left Vogt" and "Vogt [put forth] evidence that Kapsalis did not have permission to take these materials").

In short, Alatus will likely succeed in proving that Defendant Velazquez intentionally misappropriated Alatus' trade secrets. *See Monolithic Power Systems, Inc.*, 420 F. Supp. 2d 1070 at 1091-9 (affirming jury's finding of willful trade secret misappropriation where testimony indicated Defendants "first obtained, distributed and then used [plaintiff's proprietary] datasheet" to develop competing electrical backlight patent); *A10 Networks, Inc.*, 873 F. Supp. 2d at 1216 (holding evidence that Defendants, former employees of Plaintiff Foundry, "used their Foundry-issued computers to work directly for [Defendant] A10 [and] communicated regularly with A10 employees" raised triable issues).

    iv. <u>Alatus Faces Irreparable Injury and Potential Damages as a Result of the Misappropriation.</u>

As a preliminary matter, proof of the above misappropriation itself establishes the harm element of Alatus' claims. This is because "harm may be presumed" upon a showing that Defendants misappropriated Alatus' trade secrets. *Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 782 (N.D. Cal. 2013); *Western Directories, Inc. v. Golden Guide Directories, Inc.*, 2009 WL 1625945, \*6 (N.D. Cal. June 8, 2009) ("The Court presumes that Plaintiff will suffer irreparable harm if its proprietary information is misappropriated."). Defendant Velazquez's misappropriation risks irreparable injury to Alatus because the disclosure of Alatus' trade secrets would not only compromise its competitive position in the marketplace, but potentially subject Alatus to government sanctions.

(Gipson Decl. at ¶¶ 3-4, Exs. A-B; Holland Decl. at ¶¶ 5, 15-17.)  In short, Alatus has a strong likelihood of succeeding on all elements of its trade secret claims.

2.   **Alatus Will Likely Prevail on the Merits of its Contract Claims.**

Alatus will likely prevail on its breach of contract claims because there is an enforceable agreement between Alatus and Defendant Velazquez requiring him to maintain the confidentiality of all information entrusted to him and to promptly return all of Alatus' information upon request.  Defendant breached this agreement when he surreptitiously took Alatus' documents and retained its trade secrets despite repeated demands to return Alatus' documents.

"To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014).

Here, there was a contract between Alatus and Defendant Velazquez.  Alatus' predecessor entity provided that contract to Defendant, which Defendant signed as a condition of employment on June 16, 2016.  (Ortiz Decl. at ¶¶ 5-7, Ex. A.)  Alatus continued to compensate Velazquez as an employee until his termination in February 2019.  (*Id*.)

Defendant Velazquez breached the contract when he failed to return Alatus' confidential information upon his termination.  (*Id*.)  Defendant's use of Alatus' confidential information to form a competitive venture and subsequent disclosure of that information to third parties also constitutes a breach of the agreement. (*Id*.) Alatus is entitled to specific performance and injunctive relief to remedy Defendant's breach. (*Id*., Ex. A at ¶ 6 ("Receiving party agrees that money damages would not be a sufficient remedy for any breach of this Agreement . . . . [and that Alatus] shall be entitled to specific performance and injunction").)  *See Kim Laube & Co., Inc. v. Wahl Clipper Corp*., No. LACV0900914JAKJCX, 2013 WL 12084741, at *8 (C.D.

-10-

1  Cal. Mar. 8, 2013) (holding plaintiff raised triable breach of contract claim where
2  evidence showed that defendant shareholder violated confidentiality provisions by
3  misappropriating plaintiff's confidential information).

4        **B.**    **Alatus Will Suffer Irreparable Harm if a TRO is Not Granted.**

5       Alatus stands to suffer irreparable injury absent the issuance of a temporary
6  restraining order.  Defendant Velazquez simply cannot be allowed to use or
7  disseminate Alatus' most prized trade secrets.  To do so would risk untold damage to
8  Alatus' business and market reputation, and may even expose Alatus to the potential
9  risk of government sanctions.

10       Evidence of lost business or business opportunities, as well as damage to
11  goodwill, will satisfy the requirement to show irreparable harm.  *See Stuhlbarg Int'l*
12  *Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).
13  Specifically, with respect to trade secret claims, "[a]n injunction may be used to
14  eliminate any unfair head start a defendant may have gained by improper use of
15  confidential information and is appropriate if it 'place[s the defendant] in the position
16  it would have occupied if the breach' had not occurred." *Netlist, Inc. v. Diablo Tech.*,
17  Inc., No. 13-cv-05962-YGR, 2015 WL 153724, *7 (N.D. Cal. Jan. 12, 2015) (quoting
18  *Winston Research Corp. v. Minnesota Mining & Mfg.*, 350 F.2d 134, 141-42 (9th Cir.
19  1965).  Further, the breach of an enforceable confidentiality agreement occasions
20  harm that is intangible and difficult to quantify, and therefore qualifies as irreparable
21  harm.  *See Ocean Beauty Seafoods, LLC v. Pacific Seafood Group Acq. Co., Inc.*,
22  648 Fed. Appx. 709, 712 (9th Cir. 2016) (vacating order denying preliminary
23  injunction for breach of non-compete agreement prohibiting disclosure of
24  confidential information).

25       Here, the unfair advantage that the Defendant Vazquez may obtain through his
26  misappropriation of the Alatus' trade secrets is sufficient to establish irreparable
27  harm.  (Holland Decl. at ¶¶ 15-17.)  Alatus' competitive market position is under
28  immediate threat by Defendant's unfair head start in the industry and/or in assisting

others with their efforts to unfairly compete with Alatus. (*Id.*)  *See Waymo LLC v. Uber Technologies, Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, *11 (N.D. Cal. May 15, 2017) (where "it may prove impossible to fully restore the parties to their respective competitive positions as if no misappropriation had occurred" it was "far better to instead put in prophylactic measures now to prevent misappropriation (or further misappropriation) to the extent warranted on this record"); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37–38 (2d Cir.1995) (in trademark licensing case, deprivation of opportunity to expand business is irreparable harm).

The potential disclosure of Alatus' trade secrets to third parties also risks irrevocable damage to Alatus' interests. (*Id.*)  For one, Alatus may lose its hard-earned goodwill if its clients had the impression that their product orders and purchases were leaked to market competitors. (*Id.*)  *See SV3, LLC v. GG Distribution, Inc.*, No. EDCV 19-46 JGB (SPX), 2019 WL 1091337, at *5 (C.D. Cal. Jan. 18, 2019), order dissolved, No. EDCV 19-46 JGB (SPX), 2019 WL 1090772 (C.D. Cal. Feb. 6, 2019) (holding "lost profits and customers, as well as damage to goodwill and business reputation—are sufficiently damaging to constitute irreparable injury.") In fact, it does not matter whether or not a disclosure *actually* occurred, *since the perception alone* could harm Alatus' goodwill.  *See Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm.").

The irreparable harm is not limited to current customers however.  Potential customers would likewise be reticent to conduct business with a contractor perceived to have failed or mismanaged confidential customer information. (*Id.*)  This too supports a finding of irreparable harm.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective

1   customers or goodwill certainly supports a finding of the possibility of irreparable

2   harm.").

3   ### C.      The Balance of Hardships Favors Granting this Application

4       The balance of hardships favors granting Alatus injunctive relief.  A failure to

5   grant such relief risks the loss of Alatus' customers and goodwill.  Conversely,

6   granting the TRO would impose nominal burdens on Defendant Vazquez, requiring

7   him to secure all of Alatus' information stored on his personal devices and refrain

8   from sharing this information with any third parties.

9       "To obtain a preliminary injunction, the moving party must show either (1) a

10  combination of probable success on the merits and the possibility of irreparable

11  injury, or (2) that serious questions are raised and the balance of hardships tips

12  sharply in its favor. These formulations are not different tests but represent two points

13  on a sliding scale in which the degree of irreparable harm increases as the probability

14  of success on the merits decreases. Under either formulation, the moving party must

15  demonstrate a significant threat of irreparable injury, irrespective of the magnitude

16  of the injury." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc*., 109 F.3d

17  1394, 1397 fn 1 (9th Cir. 1997). "A court balancing the equities will look to the

18  possible harm that might befall the various parties." *Kelly v. Primco Mgmt*., Inc.,

19  No. CV1407263BROSHX, 2015 WL 10990368, at *16 (C.D. Cal. Jan. 12, 2015).

20      Here, Alatus has the most to lose.  A failure to grant relief here will harm

21  Alatus' market position and goodwill, and confer an unfair competitive advantage to

22  Defendant Velazquez.   *See e.g., Gucci Am., Inc. v. Los Altos Boots, Inc*.,

23  No. CV1406680BROAJWX, 2014 WL 12561613, at *7 (C.D. Cal. Aug. 27, 2014)

24  ("If Defendant continues selling counterfeit shoes, Gucci will continue to suffer

25  irreparable injury to its goodwill and reputation. Accordingly, the Court finds the

26  balance of hardships weighs in favor of granting the TRO.").

27      Defendant stands to lose nothing except the opportunity to misuse confidential

28  information entrusted to him for unlawful competitive gain. *See Disney Enterprises,*

-13-

*Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) ("harm caused by [the enjoinment of] illegal conduct does not merit significant equitable protection."). Altus demands a straightforward order prohibiting Defendant from using or disclosing Alatus' information in Defendant's possession.  The worst case scenario would involve Defendant having no such information—meaning Defendant would face no burden at all if enjoined from such acts.

### D. The Public Interest Weighs Towards Granting an Injunction

The public interest is served by issuance of a preliminary injunction to protect the integrity of the markets.  Alatus is entitled to guard its hard-earned business secrets from unauthorized disclosure and misuse.  An injunction would reinforce the public's interests in protecting business' rights to reap the fruits of their labor, and encouraging fair competition based on independent capital and innovation, instead of deceit and free-riding.  *See e.g., Warner Bros. Entertainment, Inc. v. WTV Systems, Inc.*, 824 F. Supp. 2d 1003, 1015 (C.D. Cal. 2011) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in a protected work."); *Netflix Studios, LLC v. Dragon Media Inc.*, No. CV 18-230-MWF (ASX), 2018 WL 7891027, at *5 (C.D. Cal. Dec. 21, 2018) (holding public interest served by "protecting copyright owners' marketable rights to their work" and upholding the "economic incentive" to continue creating original product and services for public consumption).

## IV. REQUEST FOR EXPEDITED DISCOVERY

Alatus simultaneously requests an order for expedited discovery in this action. In determining whether good cause exists, the court considers: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process

-14-

the request was made." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009).

The above preliminary injunction factors justify a finding of good cause that entitle Alatus to expedited discovery to ascertain the full scope of Defendant's misappropriation of its proprietary information. *See Davis*, 673 F. Supp. 2d 1063 at 1066; *SV3, LLC*, 2019 WL 1091337, at *8 (noting "[e]xpedited discovery may be appropriate when it is needed to prepare for a pending preliminary injunction hearing" and granting order for expedited discovery "in light of the harm caused to Plaintiff" by Defendant's ongoing conduct to be enjoined); *see also Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 4, 9 (D.D.C. 2008) (granting expedited discovery where necessary "to ascertain the true identities of the Defendants").

Alatus seeks the timely deposition of Defendant Velazquez.  Alatus also seeks to propound discovery requests to identify all of Alatus' information in Velazquez's possession, custody, and control, and any third parties in communication with Velazquez to whom he may have transferred and/or shared the confidential information.  Finally, Alatus will propound a request to inspect Defendant's computer devices.  Such inspection will be conducted by a third-party neutral that can confirm Alatus' confidential information is secure and was not transmitted to any unidentified devices.  This discovery is narrowly tailored to Alatus' claims and poses a *de minimis* burden on Defendant since Alatus would ordinarily seek this discovery in the course of the case.  *See L'Oreal USA Creative, Inc. v. Maggy Tsui*, No. CV168673FMOFFMX, 2016 WL 9275404, at *7 (C.D. Cal. Dec. 22, 2016) (finding good cause to expedite discovery upon issuance of temporary restraining order).

## V.   <u>CONCLUSION</u>

For the aforementioned reasons, Alatus requests the issuance of a temporary restraining order, and an order to show cause why a preliminary injunction should not issue against Defendant Mario Velazquez.  The order should restrain and enjoin

Velazquez and all those in active concert or participation with him from using, disclosing, or sharing Alatus' proprietary with third parties.


Dated:  September 30, 2019          **DLA PIPER LLP (US)**


By: /s/ Benjamin M. Gipson
_____
    BENJAMIN M. GIPSON
    HECTOR E. COREA
    Attorneys for Plaintiff
    ALATUS AEROSYSTEMS