Benjamin M. Gipson (CA SBN: 222830)
ben.gipson@us.dlapiper.com
Hector E. Corea (CA SBN: 318971)
hector.corea@us.dlapiper.com
**DLA PIPER LLP**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: 310.595.3022
Fax: 310.595.3300

Attorneys for Plaintiff
ALATUS AEROSYSTEMS, a
California Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALATUS AEROSYSTEMS, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MARIO VELAZQUEZ, an individual, and DOES 1 through 50, inclusive<br><br>Defendants. | CASE NO. 19-cv-1869<br><br>**DECLARATION OF SCOTT HOLLAND IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Date: To Be Determined<br>Time: To Be Determined<br>Courtroom: To Be Determined<br>Judge: To Be Determined |

I, Scott Holland, declare as follows:

1. I am the Chief Executive Officer ("CEO") and Sole Board Member of Alatus Aerosystems, a California corporation ("Alatus"). The matters stated below are true and of my own personal knowledge, and if called as a witness, I could and would competently testify to the same.

2. I began my role as CEO of Alatus on August 22, 2018 and have served as Board Member of Alatus since August 22, 2018. As the CEO, I am responsible for overseeing the daily operations of Alatus. This includes making major corporate decisions, managing the overall operations and resources of the company, and serving as the public face of the company. I am also tasked with supervising the Alatus management team and their respective departments.

### I. Alatus' Business

3. Alatus is a longstanding California business that assembles, manufactures, and supplies parts and products for use in the aerospace and defense industries. With more than 50 years of experience serving clients across the state and nation, Alatus has earned a reputation as a leading provider of aviation components and systems. Alatus has four locations in Southern California including the City of Industry, Chatsworth, Walnut, and Brea.

4. Alatus specializes in manufacturing wings, landing gear, and engine pylons for commercial and military clients. Alatus' reputation has also attracted the attention of numerous defense contractors and the United States Government. Alatus assembles and supplies key military products, including aviation and artillery systems used by the nation's armed services.

5. As a defense contractor, Alatus is subject to the International Traffic in Arms Regulations ("ITAR"). ITAR controls the manufacture, sale, and distribution of defense-related products, services, and information. Alatus invests great resources to maintain compliance with ITAR and ensure all information entrusted to Alatus by its partners and customers is kept in strict confidence.

## II. Mr. Velazquez's Departure and Misappropriation of Trade Secrets

6. Mr. Mario Velazquez was employed with Alatus from June 2014 until February 2019. There are strong indications that Defendant Velazquez knew that his position was going to be eliminated and contemplated working for a competitor and/or starting a competing business with a former Alatus executive, Richard Oak. Defendant Velazquez and Mr. Oak were close associates prior to their termination, and upon information and belief, are currently working on a joint business venture competitive with Alatus' business.

7. After the termination of Mr. Velazquez's employment, Alatus engaged counsel to investigate whether Mr. Velazquez complied with his employment obligations leading up to his exit from the company. Counsel subsequently informed Alatus that Mr. Velazquez had purposely emailed at least ten sensitive company documents containing Alatus' trade secrets to his personal email address within a day of his termination.

8. Prompted by Alatus' subsequent demand to return these documents, Mr. Velazquez returned some of the sensitive documents. He falsely represented that he had returned all of Alatus' information. Mr. Velazquez continues to possess at least two of Alatus' key documents—a Global Asset List, and "Special" spreadsheet.

9. These two documents contain Alatus' most coveted business secrets. The Global Asset List contains confidential and proprietary information relating to each of Alatus' machining assets, including their operating system, and capacity. The "Special" spreadsheet has a complete compilation of Alatus' customers, a list of the parts and products ordered by those customers, and Alatus' competitive pricing for those orders. Defendant also has in his possession Alatus' product specifications information setting out the raw materials required for the manufacturing of the products.

//
//

### III. Alatus' Reasonable Efforts to Guard its Trade Secrets

10. Alatus has extensive safeguards in place to secure its proprietary information. To start, also Alatus has physical security restrictions in place at all of its facilities. Alatus' offices and manufacturing facilities are secured by gates limiting access to its employees and consultants and require admittance by a security guard or company issued ID card. Alatus, in accordance with ITAR requirements, also mandates that visitors verify their identity and security risk through a visual compliance system as a condition of entering Alatus' manufacturing facilities.

11. Alatus also has digital security restrictions in place. Alatus has a policy of limiting access to its proprietary information to employees or contractors on a strict need-to-know basis. Alatus requires all employees to sign confidentiality agreements. Alatus information is stored in a digital drive, through which access to confidential information is limited to only the employees to which access is granted.

12. In addition, in order to access the Alatus digital drive, one must log in through an Alatus computer and the unique, Alatus-issued username and password which is changed every 90 days. Employees may only access this drive through an Alatus issued computer. In addition, should an employee need to work remotely, the employee may only do so through the secured Virtual Private Network ("VPN") on a computer that is provided to the employee by Alatus.

13. To the extent Alatus' confidential information was shared with Mario Velazquez, he was granted limited, but executive level access to proprietary and confidential information. For instance, Mario Velazquez was granted access to the "Industry," "Walnut," "Chatsworth Public," and "Brea" drives on the Alatus digital drive.

14. However, Mr. Velazquez was only granted access to certain folders within those drives; for example, he could not access the "Human Resources" folder. Mr. Velazquez's access was significantly greater than most Alatus employees, but all access to which Mario Velazquez was granted was on a need-to-know basis.

### IV. Alatus Faces Imminent Harm if Its Trade Secrets are not Returned

15. Mr. Velazquez's misappropriation risks irreversible injury to Alatus because the disclosure of Alatus' trade secrets would compromise its competitive position in the marketplace. First, Alatus' stands to lose its competitive market position to Mr. Velazquez and any of his associates because they can use Alatus' trade secrets to gain an unfair head start in pricing and material specifications.

16. Even worse, the potential disclosure of Alatus' trade secrets to third parties risks irrevocable damage to the company's business interests. Such disclosure risks the loss of Alatus' hard-earned goodwill if its clients had the impression that their product orders and purchases were leaked to market competitors. Whether or not Mr. Velazquez actually has done that, the mere perception that he did would harm our reputation and customer relationships.

17. Potential customers would also be unwilling to conduct business with a contractor like Alatus that is perceived to have mismanaged confidential customer information. The only way to protect Alatus' business and reputation is to enjoin Defendant Vazquez from using or disclosing Alatus' proprietary information.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct, and that this was executed on September 23, 2019, at City of Industry, California.

By: _____
SCOTT HOLLAND