1

2  Benjamin M. Gipson (CA SBN: 222830)
   ben.gipson@us.dlapiper.com
3  Hector E. Corea (CA SBN: 318971)
   hector.corea@us.dlapiper.com
4  **DLA PIPER LLP**
   2000 Avenue of the Stars, Suite 400 North Tower
5  Los Angeles, California 90067-4704
   Tel:  310.595.3022
6  Fax:  310.595.3300

7  Attorneys for Plaintiff
   ALATUS AEROSYSTEMS, a
8  California Corporation

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  ALATUS AEROSYSTEMS, a            CASE NO.   19-cv-1869
    California corporation,
13                                   **DECLARATION OF ADRIANA**
                Plaintiff,           **ORTIZ IN SUPPORT OF**
14                                   **PLAINTIFF'S APPLICATION FOR**
         v.                          **TEMPORARY RESTRAINING**
15                                   **ORDER AND ORDER TO SHOW**
    MARIO VELAZQUEZ, an individual,  **CAUSE WHY A PRELIMINARY**
16  and DOES 1 through 50, inclusive **INJUNCTION SHOULD NOT**
                                     **ISSUE**
17
                Defendants.          Date: To Be Determined
18                                   Time: To Be Determined
                                     Courtroom: To Be Determined
19                                   Judge: To Be Determined

20

21

22

23

24

25

26

27

28

DECLARATION OF ADRIANA ORTIZ IN SUPPORT OF APPLICATION FOR TRO

1    I, Adriana Ortiz, declare as follows:

2        1.    I am the Executive Vice President of Human Resources of Alatus

3    Aerosystems, a California corporation ("Alatus").  The matters stated below are true

4    and of my own personal knowledge, and if called as a witness, I could and would

5    competently testify to the same.

6        2.    I began working as the Human Resources Manager for Triumph

7    Structures – Los Angeles, Inc., a California corporation ("TSLA") in 2007.  As the

8    Human Resources Manager, I was responsible for overseeing all Human Resources

9    functions for TSLA.  This includes conducting and supervising training for new hires

10   and current employees, enforcing company policies, and conducting exit interviews

11   of employees.  On August 22, 2018, Aerospace Systems and Structures, LLC,

12   acquired 100% of the issued and outstanding stock of TSLA and on August 23, 2018,

13   changed TSLA's name to Alatus.  I transitioned to become an Alatus employee with

14   the same responsibilities on that date.

15   I.   **Defendant Velazquez's Employment with Alatus Termination.**

16       3.    Defendant Mario Velazquez is Alatus' former program manager.

17   Mr. Velazquez was originally hired by TSLA on or around June 9, 2014.   He

18   subsequently became an employee of Alatus on August 23, 2018.

19       4.    As part of his duties, Defendant Velazquez was responsible for

20   interfacing between the Alatus production department and Alatus customers to

21   facilitate customer orders and ensure timely delivery of parts and products.

22   Mr. Velazquez worked primarily in the Brea and Walnut locations.

23       5.    As a condition of his employment with Alatus (and previously TSLA),

24   Defendant Velazquez was offered employment on or about May 19, 2014, and he

25   began work on or about June 9, 2014.  On that date he entered into an employee

26   confidentiality agreement.  This was later supplemented by an additional mutual

27   confidentiality agreement executed on June 16, 2016. True and correct copies of

28   these agreements are attached hereto as **Exhibit A.**

6.  These agreements prohibited the unauthorized disclosure of Alatus' information.  In addition to his execution of these documents, Mr. Velazquez was repeatedly reminded of his confidentiality obligations.  In January of 2016, Mr. Velazquez completed training regarding the confidentiality of government documents and export controls.  Further, TSLA had a strong Code of Business Conduct in place.  This Code of Business Conduct made clear that TSLA employees were expected to maintain the confidentiality of information entrusted to them, and this responsibility was in place both during and after employment.  Mr. Velazquez also completed training on this policy in January of 2016.   True and correct copies of those certificates of completion are attached hereto as **Exhibit B**.

7.  Alatus terminated Velazquez's employment on or about February 19, 2019 when his position was eliminated due to restructuring.  As part of his exit process, I conducted an exit interview with Mr. Velazquez.  In that interview, I reminded him of his ongoing confidentiality obligations, and collected Alatus property in his position.  At the conclusion of the interview he affirmatively stated that he did not have any other Alatus property and that he had returned all of Alatus' property to me.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct, and that this was executed on September 23 , 2019, at City of Industry California.

By: 
ADRIANA ORTIZ

DLA PIPER LLP (US)
LOS ANGELES

-2-

DECLARATION OF ADRIANA ORTIZ IN SUPPORT OF APPLICATION FOR TRO

EXHIBIT "A"



**Triumph Structures -
Los Angeles**
*A Triumph Group Company*

AS9100 Registered
ISO 9001 Registered

## MUTUAL CONFIDENTIALITY AGREEMENT

In connection with possible transactions between Triumph Structures-Los Angeles, Inc. and _Mario Velazquez_, whereby each party may supply products and/or services to the other party, each party may provide the other party with certain information pertaining to _Triumph Structures-Everett Inc._ which is either non-public, confidential, or proprietary in nature concerning its products and processes. All information furnished to the party, including any and all designs, specifications, plans, drawings, data, report, analysis, studies, test results, and other such information, whether in documentary or electronic format, which contain or otherwise reflect such information, is hereinafter referred to as the "Proprietary Information". The purpose of this agreement (the "Agreement") is to set forth the understandings between the Parties concerning the Proprietary Information. Accordingly, in consideration of one party furnishing the other party with the Proprietary Information, the Parties agree that:

1. Proprietary Information exchanged under this agreement shall not, without the disclosing party's prior written consent, be disclosed by the receiving party, or by its affiliates, agents, representatives, or employees in any manner whatsoever, in whole or in part, and shall be used by the receiving party or its affiliates, agents, representatives or employees, solely for the purpose of evaluating whether to enter into further agreement with the disclosing party for the supply of products and/or services. Moreover, the receiving party agrees to reveal the Proprietary Information only to its affiliates, agents, representatives and employees who need to know the Proprietary Information and who are informed by receiving party of the confidential nature of the Proprietary Information.

2. Upon the disclosing party's request, the receiving party will promptly return to the disclosing party all Proprietary Information furnished to receiving party, in whatever format, and will destroy all analyses, compilations, studies, and other material prepared by receiving party based in whole or in part on such Proprietary Information. Receiving party shall not use any of the Proprietary Information for any purpose other than as provided herein without the prior written consent of the disclosing party.

3. This agreement shall not apply to information which:
    (a)  is already known by the receiving party prior to the date
         of this Agreement as shown by clear and convincing evidence;
    (b)  is or becomes publicly known through no
         wrongful act of receiving party; or
    (c)  is disclosed pursuant to a requirement of

a governmental agency or disclosure

(d)     is required by operation of law.

4.     The disclosing party has endeavored to include in the Proprietary Information those materials which it believes to be reliable and relevant for the purpose of its evaluation by receiving party. Receiving party acknowledges that the disclosing party makes no representation or warranty as to the accuracy or completeness of the Proprietary Information and receiving party agrees that neither the disclosing party nor any of its affiliates nor any of its or their agents, representatives or employees shall have any liability to the receiving party or its representatives resulting from the use or content of the Proprietary Information except as may be set forth in a subsequent agreement between the parties for products or services.

5.     In the event that receiving party or anyone to whom receiving party transmits the Proprietary Information pursuant to this Agreement becomes legally compelled to disclose any of the Proprietary Information, receiving party will provide the disclosing party with prompt written notice so that it may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. In the event that such protective order or other remedy is not obtained, or that Triumph waives compliance with the provisions of this Agreement, receiving party may disclose such Proprietary Information to the extent compelled to do so without liability hereunder. Receiving party agrees that it will use reasonable efforts to obtain assurances that confidential treatment will be accorded to such information.

6.     Receiving party agrees that money damages would not be a sufficient remedy for any breach of this Agreement by receiving party or its affiliates, agents, representatives or employees, and that in addition to all other remedies, the disclosing party shall be entitled to specific performance and injunction or other equitable relief as a remedy for any such breach.

7.     This Agreement shall remain effective for a period of  --120 days------; however the parties' obligation to keep information released under terms of the agreement confidential shall survive for a period of 10 Months/ Years following the documentable date of the given information's disclosure.

8.     This Agreement embodies all the understandings and agreements heretofore had between the parties with respect to the subject matter hereof and may not be changed or terminated in advance of its expiration, except by an instrument in writing signed by the parties. In case any provision of this Agreement shall be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions of the Agreement shall not in any way be affected or impaired thereby.

The foregoing accurately sets forth the entire agreement between the parties for non-disclosure, indicated by the parties signing this Agreement in the space indicated below

| For Triumph | For (Enter other Party), |
|---|---|
| By :<br>_Adriana Ortiz_ | By<br>_Mario Velazquez_ |
| Title :<br>_Director, Human Resources_ | Title<br>_Program Manager_ |
| Signature<br><br> | Signature<br><br> |
| Date:<br>6/16/16 | Date:<br>6-16-16 |



**Triumph Structures -
Los Angeles, Inc.**
*A Triumph Group Company*

# Employee Confidentiality Agreement

## EMPLOYEE STATEMENT

I, *Mario Velazquez*, in consideration of my employment by Triumph Group Inc. or one of its affiliated companies, and the compensation to be paid to me, and intending to be legally bound agree as follows:

1.  **Definitions.** The term "Triumph" as used in this Agreement includes Triumph Group, Inc. and all of its divisions, subsidiaries and affiliates, including the above-named companies.

2.  **Disclosure of Confidential Information.** I shall not at any time during my employment or thereafter, except as properly required in the course of my employment, use, publish, disclose or authorize anyone else to use, publish or disclose any Confidential Information belonging or relating to Triumph. Confidential Information includes, but is not limited to, models, drawings, blueprints, memoranda and other materials, documents or records of a proprietary nature; information relating to research, manufacturing processes, bills of material, finance, accounting, sales, personnel management and operations; and information particularly relating to customer lists, price lists, customer service requirements, costs of providing service and equipment, pricing and equipment maintenance costs.

3.  **Use and Return of Company Property.** I shall not, in the course of my employment or thereafter, use or permit others to use materials, equipment or other Triumph property for personal purposes. Further, I shall not make copies of, resell or transfer any computer software owned or licensed by Triumph. On termination of my employment, I will deliver to Triumph all property belonging to Triumph, and will not retain any copies or reproductions of correspondence, reports, drawings, photographs or documents containing Confidential Information or relating in any way to the business of Triumph.

4.  **Patents, Copyrights and Trade Secrets.** I will disclose and hereby assign to Triumph any and all material of a proprietary nature, particularly including, but not limited to, material subject to protection as trade secrets or as patentable or copyrightable ideas which I may conceive, invent, or discover during the course of my employment with Triumph (including employment prior to the date hereof, if any) which relate to the business of Triumph, or were developed using Triumph's resources (collectively, the AInventions@), and I shall execute and deliver all papers, including applications for patents and do such other acts (entirely at Triumph' s expense) as may be necessary for Triumph to obtain and maintain proprietary rights in any and all countries and to vest title to such Inventions in Triumph.

F:\Law\Model Agreements\Confidentiality and Patent Agreement.doc

5.   **Term; Modifications**.  THE PROVISIONS OF THIS AGREEMENT SHALL SURVIVE TERMINATION OF MY EMPLOYMENT RELATIONSHIP WITH TRIUMPH. This Agreement may be modified or waived only by a written instruments signed by an officer or other authorized executive of Triumph.

6.   **Severability**.  The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision shall not affect the validity and enforceability of the other provisions hereof.  If any provision of this Agreement is unenforceable for any reason whatever, such provision shall be appropriately limited and given effect to the extent that it may be enforceable.

7.   **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to contracts executed and performed exclusively in such State.

I HAVE READ THIS AGREEMENT AND FULLY UNDERSTAND ITS TERMS.

Signature _____

Signed at _Walnut, CA_ , this _9th_ day of _June_ , 20_04_

Witness: _____

EXHIBIT "B"

Print this Certificate

# Certificate of Completion

This certifies that

## Mario Velazquez

completed the

# Confidentiality (42 CFR)

course on 1/6/2016

Certified by:

 Triumph Group, Inc.

**Triumph Group**
*899 Cassatt Road, Suite 210*
*Berwyn, PA 19312*

Close this window after printing the certificate.

JAN 1 1 ENT'D

# Certificate of Completion

This certifies that

**Mario Velazquez**

completed the

 # Export Controls

course on 1/27/2016

Certified by:

Triumph Group, Inc.

***Triumph Group***
*899 Cassatt Road, Suite 210*
*Berwyn, PA 19312*

# Certificate of Completion

This certifies that

## Mario Velazquez

completed the

# ✓ Code of Business Conduct for Triumph

course on 1/27/2016

Certified by:

 Triumph Group, Inc.

### *Triumph Group*
*899 Cassatt Road, Suite 210*
*Berwyn, PA 19312*